No. 46,442

Ruth I. Smith, *Appellant,* v. Valentine Newell, *Appellee,* and Ralph E. Smith, as next friend of Randy E. Smith, a minor, *Appellant,* v. Valentine Newell, *Appellee.*

(499 P. 2d 1112)

Opinion filed July 19, 1972.

*Ralph E. Skoog,* of Dickinson, Crow and Skoog, of Topeka, argued the cause, and *Gordon Lowry,* of Valley Falls, and *Rost, Rost and Macnish,* of Topeka, were with him on the brief for the appellants.

*Harold Doherty,* of Topeka, argued the cause, and *William Leech,* of Oskaloosa, and *James G. Boyett,* of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: These two actions arose out of an automobile collision which occurred on October 20, 1968. The appellant, Ruth I. Smith, is the wife of Ralph E. Smith. Ruth and Ralph are the parents of Randy E. Smith who was 11 years of age at the time of the collision. At the time the accident occurred Ralph E. Smith was driving the family car in an easterly direction on U. S. Highway 24. Ruth I. Smith was a passenger sitting on the front seat and Randy was a passenger sitting on the rear seat. The appellee, Valentine Newell, had been driving his automobile south on U. S. 59 and stopped at a stop sign at the point where U. S. 59 and U. S. 24 intersect. As the Smith vehicle approached the appellee pulled into the intersection and the vehicles collided in the intersection on the south half of U. S. 24.

Three separate actions were filed by Ralph E. Smith, Ruth I. Smith and Randy E. Smith against Valentine Newell to recover damages for personal injuries incurred by each plaintiff in the accident. The three cases were consolidated for trial before a single jury. The issue of liability was vigorously contested by the parties. The three cases were submitted to the jury on special interrogatories without a general verdict. In its answers to the special interrogatories the jury found the appellee, Valentine Newell, negligent in failing to keep a proper lookout. The jury found that Ralph E. Smith was negligent in failing to keep his vehicle under proper control. Having found that Ralph E. Smith was negligent, the jury did not determine his damages. In regard to the appellant, Ruth I. Smith, the jury found that she was not negligent and assessed her damages in the amount of $22,750. The jury found that Randy E. Smith was not negligent and assessed his damages at $44. All of the plaintiffs filed motions for a new trial which were argued to the court and overruled. No evidence was produced in support of the motions for a new trial and no complaints were made of trial errors or instructions to the jury. Ralph E. Smith did not take an appeal after his motion for a new trial was denied.

The appellants, Ruth I. Smith and Randy E. Smith, have appealed to this court. The only question in this case is whether the verdict of the jury in favor of the appellant, Ruth I. Smith, and the verdict in favor of appellant, Randy E. Smith, are so grossly inadequate as to compel the granting of a new trial on the issue of damages only. In substance Ruth I. Smith and Randy E. Smith contend that the awards for the personal injuries to each are contrary to the evidence and that the jury ignored the proven elements of the damage, ignored the instructions of the court as to damages, and that the damages awarded are so grossly inadequate as to have been given under the influence of passion and prejudice as a matter of law.

In ruling on the motions for a new trial the trial judge in his memorandum opinion found that there was no evidence whatsoever from which the jury could find that either Ruth I. Smith and Randy E. Smith as passengers in the vehicle were in any way negligent prior to the collision. The only question before the trial court and also before this court is whether or not the awards of damages to Ruth I. Smith and Randy E. Smith were so inadequate that they were the result of passion and prejudice as a matter of law.

Insofar as the injuries and damages suffered by Randy E. Smith are concerned the record discloses that Randy was age 11 at the time of the accident and was sitting on the back seat of his father's vehicle. Following the accident he was taken to the hospital where X rays were negative for injuries. The evidence was that he was nervous and that his shins bothered him for about six weeks but that he suffered no permanent injuries or scarring of any kind. He saw Dr. William H. Crouch at the emergency room of the hospital on the day of the accident but never saw a doctor thereafter. He may have missed one day of school because of his concern for his mother's injuries. There was no medical testimony presented to show the nature or extent of Randy E. Smith's injuries. Randy's medical expenses were in the total amount of $44. The jury awarded him $44 which was the exact amount of his medical bills.

The evidence as to the damages suffered by Ruth I. Smith was more extensive. As a result of the collision Ruth I. Smith suffered a broken right leg, a dislocation of the ankle joint and lacerations on her face. She was taken to the hospital shortly after the collision where her leg was placed in traction and later a body cast was required. During the course of her hospitalization she was subjected to four operations including the placing of steel screws and surgical pins in her leg bone and a bone graft was required. There was evidence that Ruth I. Smith suffered a great deal of pain and discomfort with her injuries which required a prescription for drugs. As a result of her broken leg and ankle dislocation she suffered some permanent injury to her leg. The fracture of the leg bone and facial lacerations are now well healed, but at the time of the trial she was still having pain in her ankle, knee and back with some limitation of motion. At the time of the trial her medical expenses exceeded $10,300. Prior to the collision she was permanently employed in the Secretary of State's Office in Topeka and had civil service tenure. She would have earned $10,000 in wages if she had been employed from the date of injury to the time of the trial. She had not been employed since the collision occurred and the medical testimony established that she would have difficulty in performing her previous work as a file clerk. Stooping and working with files would be painful for her. The jury awarded her as damages the sum of $22,750.

We have recognized the general rule that in a personal injury action inadequacy of damages constitutes a ground for the granting

of new trial when a verdict, viewed in the light of the evidence as to the severity, duration, extent and permanency of the injuries, is so inadequate as to indicate passion and prejudice on the part of the jury. (*Levy v. Jabara,* 193 Kan. 595, 396 P. 2d 339; *Henderson v. Kansas Power & Light Co.,* 188 Kan. 283, 362 P. 2d 60.) In reviewing a judgment of a trial court granting or refusing a new trial we have emphasized that the trial court has a wide discretion which will not be reversed unless a clear abuse of discretion is shown. (*Dunn v. White,* 206 Kan. 278, 479 P. 2d 215.)

In *Henderson v. Kansas Power & Light Co.,* supra, Mr. Justice Price stated the basic rules to be applied as follows:

"In considering the questions presented, several elementary and firmly-established rules are to be kept in mind. One is that ordinarily the granting or denial of a new trial rests in the sound discretion of the trial court and a ruling thereon will not be disturbed, absent a showing of abuse of discretion or other manifest error. Another is that until the contrary is shown, a jury is presumed to have acted fairly, reasonably, intelligently and in harmony with the evidence. Still another is that the same yardstick must be applied where the claim is that a verdict is inadequate as in a case where a verdict is claimed to be excessive, and before a new trial will be granted because of the size of a verdict it must appear to be so excessive or inadequate, as the case may be, as to have been given under the influence of passion and prejudice. A still further rule is that a new trial can be granted on one of several issues, such as plaintiff seeks here—on the question of damages only (G. S. 1949, 60-3004). It is equally well settled that in the determination of matters of this kind, involving personal injuries, there is no precise formula by which courts can be guided, and each case must largely be governed by its own facts as established by the evidence." (p. 289.)

In applying these rules we should recognize that whether or not a particular verdict is excessive or inadequate is a matter on which there is a wide difference of opinion among members of the legal profession and the public at large. Some people are rather conservative in their views in this area while others are rather liberal. For this reason the litigants in personal injury cases in this state ordinarily seem to have a strong preference for trial by jury rather than trial to the court. Both the conservatives and the liberals seem to feel that the submission of this issue to a jury is more likely to bring an application of a community consensus in the award of damages. It follows that judges of this state should be reluctant to set aside a verdict of damages in a personal injury case on the ground of excessiveness or inadequacy unless there is some compelling reason. Otherwise the amount of the awards in personal injury cases in any

judicial district would be controlled by the conservative or liberal bent of the trial judge.

In the case of *Domann v. Pence*, 183 Kan. 135, 325 P. 2nd 321, we recognized that, in the nature of things, it is impossible to formulate a hard and fast rule on the question of the amount of damages to be allowed in a personal injury action for the simple reason that determination of the matter necessarily depends upon the facts and circumstances of each particular case. There we said:

"Generally speaking, it may be said that no verdict is right which more than compensates, and none is right which fails to compensate. Pain and suffering have no known dimensions, mathematical or financial, and there is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of exact proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries sustained, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence. (Syl. ¶ 3.)

This is not to say however that there is no judicial control over jury verdicts in personal injury cases where the verdict is manifestly excessive or inadequate. Then the trial judge should see that an injustice is not accomplished through the verdict of the jury. It should be kept in mind, however, that the trial judge should not substitute his own judgment for that of the jury since otherwise trial by jury would be effectively denied.

As pointed out by the trial judge in his memorandum opinion there is no uniformity in the decisions as to when damages awarded in personal injury cases are excessive or inadequate as a matter of law. We have considered the extensive annotation of cases on this subject in 11 A. L. R. 3d 9 at 297. There we find cases upholding verdicts for similar injuries in amounts far less than the award to appellant, Ruth I. Smith, in the case at bar.

In *Furstenberg v. Wesley Medical Center*, 200 Kan. 277, 436 P. 2d 369, the size of the verdict, $765, coincided exactly with the plaintiff's medical expense. There was however a denial by the jury of a counterclaim asserted by the defendant hospital for services rendered in the amount of $1,730.75. It was held that the verdict was not inadequate as a matter of law, because there was a question whether or not Mrs. Furstenberg's foot troubles were a result of the accident.

In *Timmerman v. Schroeder*, 203 Kan. 397, 454 P. 2d 522, the

plaintiff claimed damages for pain and suffering and for permanent injuries from lacerations about the face. An award of $357.95, the exact amount of the medical expense, was held to be inadequate by reason of the pain and suffering and permanent injury which were established by medical testimony. A new trial was granted on all issues because of a strong suspicion that inadequate damages were awarded as a compromise on the issues of liability and damages.

In *Henderson v. Kansas Power & Light Co.*, supra, the amount of $5,000 was held to be inadequate as a matter of law where the plaintiff suffered severe burns, disfiguring permanent injuries and had medical expenses in the amount of $3,108 and loss of wages $1,287.

In *Levy v. Jabara*, supra, the plaintiff's medical and hospital expenses exceeded $5,000. She suffered permanent disability of her entire leg of 25% to 50% and further suffered untold suffering and pain. The jury rendered a general verdict in the amount of $3,000 which was $2,000 less than her exact medical expenses. In *Levy* we held that the verdict of $3,000 returned for the plaintiff was so grossly inadequate to show the jury not only disregarded the trial court's instructions but was influenced by passion and prejudice to the extent a new trial should be granted.

In the memorandum opinion denying the motions of the appellants, Ruth I. Smith and Randy E. Smith, for a new trial on the ground of the inadequacy of the awards the trial court reasoned as follows:

"In the instant case, no evidence was produced in support of the motions. The jury did observe the plaintiffs, Ruth I. Smith and Randy E. Smith, and did hear the evidence produced before them. This court cannot guess or surmise how the jury arrived at its verdict. The jury, in the absence of evidence to the contrary, must be presumed to have acted fairly, reasonably, intelligently and in harmony with the evidence and instructions. The question is not whether this court would have granted more. As stated in the Henderson case, supra, courts must exercise great restraint in granting new trials based on the inadequacies of verdicts. The effect of the verdict as to Randy is that he is paid his medical expense and the jury believed he suffered no injury. The effect of the verdict as to Ruth is that she is paid her $10,300.00 medical expense, is paid two years salary, $10,000.00, and $2,450.00.

"Before the court may upset the verdict and grant a new trial on damages, the court must find passion and prejudice as a matter of law—in the legal sense—and this the court cannot do.

"The motions of Ruth I. Smith and Randy E. Smith for new trial for damages only are overruled."

On the entire record in this case we cannot find that the trial court clearly abused its judicial discretion in denying a motion for a new trial to the appellants in this case. In accordance with the principles heretofore discussed in this opinion we should not substitute our judgment for either that of the jury or the trial judge in arriving at an award of damages to the appellants in these cases. Although the awards are definitely on the conservative side, there is nothing in the record to indicate the existence of passion or prejudice on the part of the jury in arriving at its verdict. The learned and able trial judge along with the jury heard all of the witnesses and concluded that the awards in these cases should stand. We cannot say he abused his discretion in so ruling.

The judgment is affirmed.

FONTRON, J., dissenting: In my judgment, the verdict in favor of Mrs. Smith was so grossly inadequate as to shock the conscience and to indicate passion and prejudice on the part of the jury. She was correctly found not guilty of contributory negligence, yet she was awarded a sum which appears to me as less than paltry in view of her grievous injuries and extensive pecuniary losses.

Summarizing briefly, Mrs. Smith incurred medical expenses which exceeded $10,300 at the time of trial, and the record indicates that additional expenses were clearly in prospect. Not only had she sustained a loss of wages amounting to some $10,000 when the case was tried but she had lost a position of employment which provided civil service status, and other valuable benefits. Ever since the accident occurred she has endured great pain and suffering, much of which can be expected to continue. She has undergone four operations, has spent a great deal of time in hospitals and has been either in traction, in braces or on crutches more or less constantly. The medical evidence indicates that she has sustained a 50% disability of her ankle, which will continue to result in pain unless the ankle is fused; she has a very definite limitation of movement of her knee; serious back problems persist with accompanying pain and discomfort; she is no longer able to work at her former occupation as a clerk; she is unable to do her housework and can no longer join her family in recreational activities. In short, the record reveals that this victim of an accident for which she was not to blame, and concerning which the defendant was patently negligent, faces a bleak future so far as her physical condition is concerned.

For all the pain and suffering she has endured and will continue to bear, for loss of wages in the future, for substantial permanent disability and for loss of many of the pleasures which life affords— both tangible and intangible—Mrs. Smith has been awarded the miserly sum of $2355—the amount which remains after deducting past medical expenses and lost wages. I repeat, this amount is wholly inadequate.

Passion and prejudice is also indicated in Randy's case. The jury awarded $44 for "personal injury and expense." That amount, however, exactly matched his medical expenses, leaving naught for pain and suffering. It is not disputed, so far as I can ascertain, that both of Randy's shins were skinned and bruised and required two weeks to heal, that he missed a day of school, that he was highly nervous, and even at the time of trial was having some difficulties along this line. Even though his injuries could be considered entirely minimal (which I do not concede) he would be entitled, at the very least, to nominal damages above his medical expense. (*Timmerman v. Schroeder,* 203 Kan. 397, 454 P. 2d 522.)

In *Domann v. Pence,* 183 Kan. 135, 325 P. 2d 321, this court speaking through Mr. Justice Price said: "No verdict is right which more than compensates—and none is right which fails to compensate." This observation bespeaks a truth which is just as germane to the turbulent times of today as it was to the more placid conditions of yesterday.

Nothing would be gained by comparing the present verdicts with verdicts of the past where issues of adequacy were raised. Verdicts were set aside in some instances while others were upheld as adequate. It remains to be said, however, that this court has never deviated from its adherence to the rule that where an award of damages is so inadequate as to indicate passion and prejudice on the part of the jury, the verdict should be set aside and a new trial granted. (*Henderson v. Kansas Power and Light Co.,* 188 Kan. 283, 362 P. 2d 60; *Corman, Administrator v. WEG Dial Telephone, Inc.,* 194 Kan. 783, 402 P. 2d 112.)

I agree that a court should be extremely reluctant to set aside the verdict of a jury on the ground of inadequacy, for I am a firm believer in the jury system. However, a jury may occasionally fall into error, as indeed may a court, since no human institution, to my knowledge, has yet achieved perfection. Thus it is that a verdict is subject to appellate review, and where it is so grossly

inadequate as to show passion and prejudice, it should be set aside.

The proper way to dispose of this appeal, as I see it, is to direct a new trial on the question of damages only, for there is no reason to believe that the verdict resulted from a compromise on the issue of liability.

For the reasons stated, I respectfully dissent.